# 25-1179

# United States Court of Appeals for the Second Circuit

---

CITIBANK, N.A.,

*Petitioner*,

v.

THE PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York,

*Respondent*.

---

On Appeal from the United States District Court
for the Southern District of New York

---

## MEMORANDUM OF LAW IN OPPOSITION TO PETITION FOR PERMISSION TO APPEAL PURSUANT TO 28 U.S.C. § 1292(b)

---

BARBARA D. UNDERWOOD
 *Solicitor General*
ESTER MURDUKHAYEVA
 *Deputy Solicitor General*
ANAGHA SUNDARARAJAN
 *Assistant Solicitor General*
  *of Counsel*

LETITIA JAMES
 *Attorney General*
 *State of New York*
Attorney for Respondent
28 Liberty Street
New York, New York 10005
(212) 416-8073

Dated: May 12, 2025

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................................ii

PRELIMINARY STATEMENT..................................................................... 1

STATEMENT OF THE CASE ....................................................... 4

    A.   Electronic Fund Transfers and the Federal
         Electronic Funds Transfer Act ................................................ 4

    B.   Factual Background.................................................................7

    C.   Procedural History................................................................ 10

    D.   Citibank's Attempt to Seek Interlocutory Appellate Review..... 12

REASONS THE PETITION SHOULD BE DENIED............................ 13

POINT I

THIS COURT SHOULD DENY THE PETITION
FOR PERMISSION TO APPEAL ................................................................ 15

    A.   An Interlocutory Appeal Will Not Materially
         Advance the Termination of this Litigation.......................... 15

    B.   The Petition Does Not Present a Controlling
         or Substantially Disputed Question of Law. ......................... 18

POINT II

IF THIS COURT GRANTS THE PETITION, IT SHOULD PERMIT
INTERLOCUTORY REVIEW OF OTHER ISSUES DECIDED IN
THE SAME ORDER AND GRANT EXPEDITED REVIEW............................. 21

CONCLUSION ................................................................................. 25

i

# TABLE OF AUTHORITIES

**Cases**                                                                                 **Page(s)**

*Balintulo v. Daimler AG,*
    727 F.3d 174 (2d Cir. 2013) ......................................................................13-14

*California Pub. Emps.' Ret. Sys. v. WorldCom, Inc.,*
    368 F.3d 86 (2d Cir. 2004) .............................................................................22

*Century Pac., Inc. v. Hilton Hotels Corp.,*
    574 F. Supp. 2d 369 (S.D.N.Y. 2008)......................................................19-20

*German ex rel. German v. Federal Home Loan Mortg. Corp.,*
    896 F. Supp. 1385 (S.D.N.Y. 1995)..........................................................14-15

*In re A2P SMS Antitrust Litig.,*
    No. 12-cv-2656, 2015 WL 876456 (S.D.N.Y. Mar. 2, 2015) ...............18

*In re Facebook, Inc., IPO Sec. & Deriv. Litig.,*
    986 F. Supp. 2d 524 (S.D.N.Y. 2014).......................................................14-15

*Isra Fruit Ltd. v. Agrexco Agric. Exp. Co.,*
    804 F.2d 24 (2d Cir. 1986) ........................................................................ 15, 21

*Kiobel v. Royal Dutch Petroleum Co.,*
    621 F.3d 111 (2d Cir. 2010) ............................................................................ 7

*Klinghoffer v. S.N.C. Achille Lauro,*
    921 F.2d 21 (2d Cir. 1990) .............................................................................18

*Koehler v. Bank of Bermuda Ltd.,*
    101 F.3d 863 (2d Cir. 1996) .......................................................................14-15

*Laurent v. PricewaterhouseCoopers LLP,*
    No. 06-cv-2280, 2014 WL 251986 (S.D.N.Y. Jan. 22, 2014)..............19

*Markatos v. Citibank, N.A.,*
    760 F. Supp. 3d 70 (S.D.N.Y. 2024)................................................................17

ii

| **Cases** | **Page(s)** |
|---|---|

*Petersen Energía Inversora S.A.U. v. Argentine Republic
& YPF S.A.,*
 895 F.3d 194 (2d Cir. 2018) ................................................ 14

*Sears, Roebuck & Co. v. Mackey,*
 351 U.S. 427 (1956) .......................................................... 14

*Sportsinsurance.com, Inc. v. Hanover Ins. Co.,*
 No. 21-cv-1967, 2022 WL 16706941 (2d Cir. Nov. 4, 2022) ............. 22

*Westwood Pharms., Inc. v. National Fuel Gas Distrib. Corp.,*
 964 F.2d 85 (2d Cir. 1992) .......................................... 17-18

**Statutes**

*Federal*

15 U.S.C.
 § 1693 ........................................................................ 4
 § 1693a .................................................................... 5-6
 § 1693f ...................................................................... 6
 § 1693g .................................................................... 5-7

28 U.S.C. § 1292 ............................................................ 14

*New York*

Uniform Commercial Code
 § 4-A-108 .................................................................. 16
 § 4-A-202 .................................................................. 17
 § 4-A-204 .................................................................. 17

iii

## PRELIMINARY STATEMENT

Plaintiff-respondent People of the State of New York, by Letitia James, Attorney General (OAG) brought this civil enforcement action to remedy petitioner-defendant Citibank N.A.'s persistent failure to appropriately respond to unauthorized electronic fund transfers (EFTs) initiated by scammers to steal millions of dollars from its customers. The complaint alleges, among other things, that Citibank failed to properly investigate reports of unauthorized EFTs and refused to reimburse customers for their losses in violation of the federal Electronic Funds Transfer Act (EFTA), 15 U.S.C. § 1963 et seq. The complaint further alleges that Citibank's actions violated Article 4A of New York's Uniform Commercial Code (UCC) as to any transactions that are not governed by the EFTA and includes numerous additional federal and state law claims.

In January 2025, the U.S. District Court for the Southern District of New York (Oetken, J.) granted in part and denied in part Citibank's motion to dismiss OAG's complaint. Specifically, the district court (i) denied the motion in whole or in part as to OAG's claims under the EFTA, New York's Executive Law § 63(12), and New York's General Business Law (GBL) § 349; and (ii) granted the motion as to the OAG's claims under

Article 4A, the New York SHIELD Act (GBL § 899-bb(2)), and the federal "Red Flags" regulations (16 C.F.R. § 681.1, 12 C.F.R. § 41.90).

Citibank moved for leave to certify an interlocutory appeal under 28 U.S.C. § 1292(b), asserting that the district court's interpretation of the EFTA presented a controlling question of law and that appellate resolution of that question would materially advance the litigation. The district court granted the motion, notwithstanding OAG's argument that the application of the EFTA was not controlling in this case due to OAG's numerous remaining claims and alternative theories of relief and OAG's concern that further delay of this action would result in serious harm to consumers.

This Court should deny Citibank's petition for an interlocutory appeal. This appeal will not meaningfully narrow the scope of litigation or materially advance its termination because, as the district court acknowledged, OAG's complaint presented two alternative theories of liability for Citibank's conduct—under the EFTA or under Article 4A of the UCC. The district court dismissed OAG's Article 4A claims only because it found that the EFTA governed the transfers at issue; therefore, if Citibank prevails on this appeal and this Court rules that the EFTA

does *not* apply to the transfers at issue, the only consequence would be reinstatement of the OAG's Article 4A claim, which involves the same transactions and customers, affords Citibank many of the same defenses to liability, and entitles OAG to the same relief. OAG's remaining state-law fraud and deceptive business practices claims involve much of the same conduct and could result in similar relief. For similar reasons, the statutory question raised by the petition does not present a controlling question of law.

If this Court certifies an interlocutory appeal, it should exercise its discretion to review the entirety of the district court's motion to dismiss order, including the dismissal of OAG's claims under New York's SHIELD Act and the federal Red Flag Rule. In addition, the Court should consider the appeal on an expedited schedule to minimize any hardship to consumers and facilitate the prompt resolution of this action.

## STATEMENT OF THE CASE

### A.  Electronic Fund Transfers and the Federal Electronic Funds Transfer Act

This case involves electronic fund transfers (EFTs), an increasingly ubiquitous banking transaction. (*See* Compl. ¶¶ 24-27 (Jan. 30, 2024) ECF No. 1.) An EFT usually involves at least four parties: (i) the sender initiating the payment; (ii) the sender's bank; (iii) the beneficiary receiving the payment; and (iv) the beneficiary's bank. (*Id.* ¶ 46.) These transactions therefore consist of three distinct components: first, the sender instructs its bank to "pay or cause another bank to pay" the beneficiary a set amount. These instructions can be provided orally (for example, by visiting a local bank branch), in writing (for example, by writing a check), or electronically through a bank's online or mobile platform. (*Id.* ¶¶ 47-48, 55.) The sender's bank then sends a wire to the beneficiary's bank through a common wire network such as Fedwire or the Clearing House Interbank Payment System (CHIPS). (*See id.* at ¶¶ 49-54.) The beneficiary's bank then pays the beneficiary, and the sender pays their bank. (*Id.* ¶ 54.)

Congress passed the EFTA in 1978 to clarify the rights and liabilities of consumers, banks, and other intermediaries in connection with EFTs. *See* 15 U.S.C. § 1693. The goal of the EFTA and its implementing

4

Regulation E, 12 C.F.R. § 1005.3, is to allocate liability for unauthorized EFTs primarily to banks, *see, e.g.*, 15 U.S.C. § 1693g, who are better capable of instituting security measures to prevent unauthorized activity than consumers, who may end up losing their life savings through fraud or manipulation.

The EFTA broadly applies to "any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument" that is initiated through an "electronic terminal, telephonic instrument, or computer or magnetic tape" to "order, instruct, or authorize a financial institution to debit or credit an account." *Id.* § 1693a(7). The EFTA clarifies that this definition does not include five narrow categories of transfers, including, as relevant here, "any transfer of funds . . . made by a financial institution on behalf of a consumer by means of a service that transfers funds held at either Federal Reserve banks or other depository institutions and which is not designed primarily to transfer funds on behalf of a consumer." *Id.* § 1693a(7)(B).

The statute defines an "unauthorized" EFT as any electronic transfer of money from a consumer's account that is "initiated by a person other than the consumer without actual authority to initiate such transfer

5

and from which the consumer receives no benefit." *Id.* § 1693a(12). If a consumer notifies a bank either orally or in writing that the consumer believes an EFT is unauthorized, the EFTA requires the bank to investigate the allegation within ten business days, report its findings to the consumer, and, if it concludes the transaction is unauthorized, promptly reimburse the consumer. *Id.* § 1693f(a)-(b), (d). If the bank is unable to complete its investigation within ten days, it may provisionally recredit the consumer's account with funds that the consumer can use until its investigation has concluded. *Id.* § 1693f(c).

The amount of money that the bank must reimburse the consumer is tied to when a consumer provides the bank notice of the unauthorized transaction. If the consumer provides notice of the unauthorized transaction within two business days of receiving a statement from the bank documenting the transfer, the bank is required to reimburse the consumer for any loss above $50. *See id.* § 1693g(a). If the consumer notifies the bank within sixty business days and the bank establishes that the loss would not have occurred "but for" the consumer's failure to notify the bank within two business days, the bank must reimburse the consumer for any loss above $500. *See id.* If the consumer does not notify the bank

6

within sixty business days and the bank can show that the loss would not have occurred but for the consumer's failure to provide notice, the bank is not required to reimburse the consumer for any loss. *Id.* § 1693g(a). The bank bears the burden of proof as to whether an EFT was authorized and as to whether the loss would have occurred if the consumer had provided earlier notice. *Id.* § 1693g(b).

## B.    Factual Background[1]

Like many other financial institutions, Citibank allows its customers to review account information, deposit checks, and make electronic payments through its online and mobile banking platforms. (*See* Compl. ¶¶ 3, 5, 24-26.) In recent years, Citibank has integrated wire transfer services into its online and mobile platforms to provide consumers direct access to wire transfer networks to request that Citibank send money electronically on their behalf. (*Id.* ¶¶ 5, 26.)

As electronic and mobile banking have become more common, the number of scams exploiting weaknesses in electronic banking platforms

---

[1] The following facts are drawn from the allegations of the complaint and are assumed to be true for purposes of this petition. *See Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010), *aff'd*, 569 U.S. 108 (2013).

has increased dramatically. (*Id.* ¶ 29; *see id.* ¶¶ 34-35.) Scammers use a variety of techniques to get information from consumers to access consumers' bank accounts and use the bank's electronic wire transfer services and other payment systems to steal consumers' money. (*See id.* ¶¶ 29-33.) In 2022 alone, scammers stole hundreds of millions of dollars from consumers using text messages impersonating banks. (*Id.* ¶ 34.) Citibank customers have regularly been targeted by these scammers, as Citibank itself acknowledges. (*Id.* ¶ 36.)

Consumer losses have been significant and life altering. For example, one consumer had an account with Citibank that did not permit online initiation of wire transfers, yet lost $40,000 after Citibank approved a fraudulent transaction by a scammer in that amount who had changed the consumer's password, entered into a new account agreement on her behalf, and tried but failed to first execute a $39,999 wire transfer. (*Id.* ¶¶ 123-138.) Another consumer lost her life savings when a scammer gained access to her accounts while impersonating Citibank, transferred the money in her three savings accounts into her single checking account, and—after Citibank tried to call the consumer but failed to reach her—

wired the entire amount out of her account moments later. (*Id.* ¶¶ 217-231.)

When Citibank is notified by a customer of a potentially fraudulent transfer, including after a customer is victimized by a scammer, its representatives instruct the customer to visit a local branch to report the activity and initiate an investigation. (*Id.* ¶¶ 113, 118.) Citibank does not secure the customer's accounts until the customer is physically able to visit their local branch; nor does Citibank immediately contact beneficiary banks to request that stolen funds be frozen or returned. (*Id.* ¶¶ 111-113, 117.)

When a customer visits their local branch to report a fraudulent transfer, they are required to complete, execute, and notarize an affidavit detailing the scam before Citibank will take further action. (*Id.* ¶¶ 60-61, 118.) Once Citibank receives the affidavit, it performs a perfunctory investigation, often concluding with a form letter denying the claim without providing any details about the scope of the investigation or the evidence supporting Citibank's conclusion that a transfer was in fact authorized. (*Id.* ¶¶ 63-66.)

9

## C.   Procedural History

In January 2024, OAG filed this civil enforcement action against Citibank in the United States District Court for the Southern District of New York, seeking an injunction against Citibank's practices with respect to investigating and reimbursing for unauthorized EFTs and restitution to all injured consumers. (Compl. at 70-71.) The complaint alleged that Citibank's handling of unauthorized EFTs, including its failure to reimburse consumers who provided prompt notice of unauthorized EFTs and its investigatory practices following such notice, violated the EFTA and its implementing Regulation E, as well as other state and federal laws and regulations. (Compl. ¶¶ 263-325.)

Citibank moved to dismiss the complaint in its entirety. The district court (Oetken, J.) granted the motion in part and denied it in part. As relevant to this petition, the district court found that the complaint adequately alleged that that Citibank's practices violated the EFTA and Regulation E. (Petition Appendix (A.) 20a-52a, 59a-60a.) The district court also found that the complaint stated a claim for fraud under New York Executive Law § 63(12) and deceptive business practices under New York GBL § 349. (A. 68a-73a.)

10

As to the EFTA, the court rejected Citibank's argument that the transfers at issue were not EFTs under the statute but rather transfers "made by a financial institution on behalf of a consumer" by means of a wire service "which is not designed primarily to transfer funds on behalf of a consumer." (A. 21a.) The court explained that, while the EFTA excludes bank-to-bank wires sent through a common wire network such as Fedwire or CHIPS (*see* A. 24a), it does not exclude an electronic transfer from a consumer to their financial institution, even where that transfer is "made ancillary to" an interbank wire, like the payment requests described in the complaint. (A. 33a; *see also* A. 33a-48a.)

The court also concluded that intrabank transfers initiated by scammers to consolidate funds from multiple accounts are EFTs subject to the EFTA's remedial provisions. (*See* A. 48a-52a.) The court explained that OAG had adequately alleged that these transfers harmed consumers in several ways and so constituted "unauthorized" transfers under 15 U.S.C. § 1693a(12), even if a consumer's overall wealth does not change as a result of the consolidation. (*See* A. 48a-52a.) And the court concluded that Citibank's User Agreement can reasonably be read to alter the burden

of proof for allocating liability to which a consumer is entitled in an EFTA action. (A. 59a-60a.)

Because the district court allowed OAG's EFTA claims to move forward, it dismissed OAG's claim predicated on Citibank's alleged violations of UCC Article 4A, which does not apply to funds transfers governed by the EFTA. (A. 60a-61a (quoting UCC § 4-8-108).) The district court dismissed OAG's claims under New York's SHIELD Act, GBL § 899-bb(2), which imposes various security requirements on companies who hold data of New York consumers, and federal "Red Flags" regulations requiring financial institutions to maintain identity-theft-prevention measures, finding that those claims were preempted by the Fair Credit Reporting Act in this case. (A. 61a-68a.)

## D.  Citibank's Attempt to Seek Interlocutory Appellate Review

Citibank then moved under 28 U.S.C. § 1292(b) for leave to certify the district court's decision on the motion to dismiss for interlocutory appeal. OAG opposed, contending that Citibank failed to meet the extraordinarily high standards for interlocutory review in light of the fact that the complaint contains numerous claims and alternative theories of

recovery beyond the EFTA. OAG also noted the substantial risk of harm to consumers from further protraction of this litigation.

The district court granted Citibank's motion, holding that the interpretation of the EFTA's statutory exclusion is a novel and controlling question of law. (A. 78a-81a.) The district court acknowledged that the only consequence of Citibank's prevailing on the merits would be to reinstate OAG's Article 4A claim but concluded that an interlocutory appeal would "resolv[e] uncertainty about whether Article 4A or EFTA governs the conduct at issue." (A. 82a-83a.) The district court also stayed proceedings pending appeal, notwithstanding OAG's concern regarding further delay in the resolution of this case. (A. 84a-85a.)

## REASONS THE PETITION SHOULD BE DENIED

It is well established that the denial of a motion to dismiss is not immediately appealable because it is not a final judgment of the district court. *Balintulo v. Daimler AG*, 727 F.3d 174, 186 (2d Cir. 2013). Nevertheless, 28 U.S.C. § 1292 establishes a narrow exception to this rule for those orders that involve "a controlling question of law as to which there is substantial ground for difference of opinion" and from which

an immediate appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

Because certification under § 1292(b) is an exception to the "historic federal policy against piecemeal appeals," *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 438 (1956), it is "strongly disfavored," even in cases involving difficult or novel questions of law, *see In re Facebook, Inc., IPO Sec. & Deriv. Litig.*, 986 F. Supp. 2d 524, 530 (S.D.N.Y. 2014) (quotation marks omitted); *see also Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 866 (2d Cir. 1996). Certification is only appropriate in those "extraordinary cases" where appellate review of a controlling question of law may "avoid protracted and expensive litigation." *German ex rel. German v. Federal Home Loan Mortg. Corp.*, 896 F. Supp. 1385, 1398 (S.D.N.Y. 1995). And even where this condition is met, this Court has broad discretion to deny a petition for interlocutory review. *See Balintulo*, 727 F.3d at 186; *Petersen Energía Inversora S.A.U. v. Argentine Republic & YPF S.A.*, 895 F.3d 194, 212 (2d Cir. 2018).

Here, this Court should deny Citibank's petition for permission to appeal because this interlocutory appeal will not materially advance the

14

termination of this litigation and does not present a controlling question of law.

## POINT I

**THIS COURT SHOULD DENY THE PETITION FOR PERMISSION TO APPEAL**

### A. An Interlocutory Appeal Will Not Materially Advance the Termination of this Litigation.

It is well established that certification under § 1292(b) "is reserved for those cases where an intermediate appeal may avoid protracted litigation." *Koehler*, 101 F.3d at 865-66; *see German ex rel. German*, 896 F. Supp. at 1398. Certification is generally inappropriate unless an immediate appeal "promises to advance the time for trial or to shorten the time required for trial." *In re Facebook*, 986 F. Supp. 2d at 531 (quotation marks omitted) (collecting cases).

This condition is not satisfied here. Even if Citibank ultimately prevails on the merits of its appeal, the length of time needed for discovery and trial is likely to stay the same or to expand, resulting in no "appreciable saving of time," *Isra Fruit Ltd. v. Agrexco Agric. Exp. Co.*, 804 F.2d 24, 26 (2d Cir. 1986), for three primary reasons.

15

*First*, as both the district court (A. 82a-83a) and Citibank (Petition for Permission to Appeal (Pet.) at 13 (May 2, 2025), 2d Cir. ECF No. 1) acknowledge, OAG's claim under UCC Article 4A would necessarily be reinstated if Citibank were to prevail on this appeal. As the district court explained (A. 60a-61a), Article 4A is designed to fill the gaps left by the EFTA, and so excludes from its scope any funds transfers that are governed by the EFTA and Regulation E. *See* UCC § 4-A-108. Here, the district court dismissed the Article 4A claims solely because it concluded that the EFTA applies. (A. 60a-61a.) If this Court were to agree with Citibank that the transactions at issue are not governed by the EFTA, then the Article 4A claims would be permitted to move forward. Although Citibank asserts that it may wish to litigate other grounds on which to seek dismissal of the Article 4A claims (*see* Pet. at 13 n.1), this argument merely proves that this interlocutory appeal would not materially advance the ultimate termination of this litigation.

*Second*, OAG's EFTA and Article 4A claims rest on the same underlying course of dealing, involve the same consumers and unauthorized transactions, are subject to the same six-year statute of limitations and many of the same affirmative defenses, and would entitle OAG to the

16

same relief if proven at trial. *See, e.g.*, *Markatos v. Citibank, N.A.*, 760 F. Supp. 3d 70, 80-82 (S.D.N.Y. 2024) (discussing standard for Article 4A claims under New York law).

Citibank is correct to note (Pet. at 24-25) that the legal question under Article 4A is whether Citibank's actions with respect to each individual transfer were commercially reasonable and taken in good faith. Discovery could therefore include each consumer's banking history, the circumstances of their relationship with Citibank, the security protocols and processes Citibank applied, and the protocols and practices of similarly situated banks. *See id.* But the Article 4A claim would also require an inquiry into whether each transaction was, in fact, authorized or verified. *See* UCC §§ 4-A-202, 4-A-204. That is the same inquiry that is necessary to resolve OAG's EFTA claims (*see* Pet. at 24), and would require the same types of discovery as litigation under EFTA. In other words, many of the same factual issues will have to be litigated and resolved, regardless of the outcome of this appeal. *See Westwood Pharms., Inc. v. National Fuel Gas Distrib. Corp.*, 964 F.2d 85, 88 (2d Cir. 1992).

*Third*, Citibank gives no indication that it wishes to seek interlocutory review of the district court's denial of the motion to dismiss

17

OAG's state-law fraud and deceptive business practices claims. Many of the same factual issues relevant to OAG's EFTA claim will have to be litigated and decided in connection with the fraud and deceptive business practices claims regardless of the outcome of this appeal, making certification improper. *See id.*

In short, there is no reason to believe that an interlocutory appeal will facilitate and streamline motion practice or narrow the factual question that the trial court will ultimately need to resolve.

## B. The Petition Does Not Present a Controlling or Substantially Disputed Question of Law.

This Court should deny certification for the additional reason that the district court's interpretation of the EFTA does not present a controlling question of law that will significantly affect the conduct of this action.

*First*, while the resolution of an issue "need not necessarily terminate an action in order to be controlling," *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990) (quotation marks omitted), it must nevertheless "significantly affect" the conduct of the action, *In re A2P SMS Antitrust Litig.*, No. 12-cv-2656, 2015 WL 876456, at *3 (S.D.N.Y. Mar. 2, 2015) (quotation marks omitted). The existence of alternative grounds to

18

support the same relief directly undermines the conclusion that a particular question of law is controlling. *See Laurent v. PricewaterhouseCoopers LLP*, No. 06-cv-2280, 2014 WL 251986, at \*1 (S.D.N.Y. Jan. 22, 2014) (citing *California Pub. Emps.' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 95-96 (2d Cir. 2004)). As explained above (at 15-18), an interlocutory appeal will not significantly narrow the scope of discovery, the length of trial, or the factual questions that will ultimately need to be resolved.

*Second*, the district court's interpretation of the EFTA's statutory exclusions presents a mixed question of law and fact that is inappropriate for interlocutory review. *See Century Pac., Inc. v. Hilton Hotels Corp.*, 574 F. Supp. 2d 369, 371-72 (S.D.N.Y. 2008). As the motion to dismiss order makes clear, the district court's decision was based, at least in part, on the "chart included in the complaint" that detailed how certain kinds of EFTs are effectuated, how funds flow through various networks, and how institutions and their customers interact as part of that process. (A. 21a; *see* A. 30a.) Put another way, the district court's holding applied the text of the EFTA to the specific facts alleged in the complaint about how specific transfers are carried out.

19

Moreover, OAG has every reason to believe that discovery will ultimately confirm the allegations in its complaint and that further factfinding will provide the district court and this Court with additional information about how the EFTs at issue are executed. This Court is therefore likely to benefit from further factfinding in determining whether and to what extent the EFTA's statutory exclusion applies to particular transfers. *See Century Pac.*, 574 F. Supp. 2d at 371 (certification is intended to allow for review of "ephemeral question[s] of law that might disappear in the light of a complete and final record" (quotation and alternation marks omitted)).

*Finally*, though Citibank is correct that the statutory question is one of first impression in this circuit, it has not shown that the question is one that has divided the courts such that immediate intervention from this Court is warranted. As the district court explained (A. 41a-46a), none of the cases on which Citibank relies considered the statutory interpretation question at issue because none of them involved the kind of transaction at issue here. *See* Pet. at 20-22. That these cases may, in theory, suggest an alternative reading of the EFTA is insufficient to warrant certification at this stage.

Citibank has also offered no basis to conclude that the district court's decision is so disruptive to the banking industry that immediate review is necessary. It does not, for example, explain why Citibank and other sophisticated financial institutions, which routinely comply with the EFTA's requirements in the context of other transfers, including through peer-to-peer payment apps like Zelle, would face significant hardship if OAG's EFTA claims are litigated to final judgment. *Contra* Pet. at 22.

## POINT II

### IF THIS COURT GRANTS THE PETITION, IT SHOULD PERMIT INTERLOCUTORY REVIEW OF OTHER ISSUES DECIDED IN THE SAME ORDER AND GRANT EXPEDITED REVIEW

If this Court grants Citibank's petition, it should (i) exercise its discretion to allow OAG to cross-appeal the district court's dismissal of OAG's claims under New York's SHIELD Act and federal "Red Flags" regulations, and (ii) order briefing on the expedited schedule proposed below.

This Court's review under 28 U.S.C. § 1292(b) is not confined to the legal question that the district court (or the petitioner) identified as requiring immediate review. Section 1292(b) "authorizes certification of *orders* for interlocutory appeal, not certification of *questions*," *Isra Fruit*

21

*Ltd.*, 804 F.2d at 25, and this Court may address "any issue fairly included within the certified order." *California Pub. Emps.' Ret. Sys.*, 368 F.3d at 95 (quotation marks omitted). Consequently, if this Court certifies an interlocutory appeal, it has discretion to review the entirety of the district court's certified order, including those issues that were resolved against the party opposing certification, if doing so furthers the interests of judicial economy.[2] *See Sportsinsurance.com, Inc. v. Hanover Ins. Co.*, No. 21-cv-1967, 2022 WL 16706941, at *2 (2d Cir. Nov. 4, 2022).

Here, if this Court certifies an interlocutory appeal, it should permit OAG to seek interlocutory review of the district court's dismissal of OAG's claims under New York's SHIELD Act and federal "Red Flags" regulations (*see* A. 61a-68a). Review of this portion of the district court's order as part of a single interlocutory appeal would mitigate the harms of piecemeal litigation, treat the parties equitably, and provide guidance on the

---

[2] As this Court recognized in a recent summary order, there is some disagreement among the courts of appeals with respect to the availability of a cross-appeal under 28 U.S.C. § 1292(b) and on the question whether a timely notice of cross-appeal is required. *See Sportsinsurance.com, Inc. v. Hanover Ins. Co.*, No. 21-cv-1967, 2022 WL 16706941, at *3 n.4 (2d Cir. Nov. 4, 2022); *see also id.* at *2 n.3. In that same order, this Court explained that it would allow such a cross-appeal if doing so would "will promote judicial and litigant efficiency without prejudicing either party." *Id.* at *2.

scope of litigation on all of OAG's claims moving forward. And it would not prejudice Citibank or otherwise require this Court to reach beyond the existing record on appeal.

In addition, if this Court grants the petition, it should expedite briefing and oral argument. In this action, OAG seeks forward-looking relief to ensure that Citibank's customers receive the protections to which they are entitled under the EFTA and to ensure that Citibank's customers who have fallen victim to scams are reimbursed for their losses.[3] (*See* Compl. at 70-71.) Any delay in the resolution of this litigation prejudices those customers' rights, including their right to recover money that was fraudulently stolen, needlessly prolonging those customers' financial hardship. (*See* Compl. ¶¶ 120-262.) And a prolonged delay interferes with OAG's ability to protect the public interest.

Accordingly, OAG respectfully requests that, if the Court grants the petition, it so-order the below briefing schedule.

---

[3] Citibank's representation that it will voluntarily implement some forward-looking interim measures while this appeal is pending does not undermine the need for expedited review because these interim measures fall short of the EFTA's requirements, as Citibank acknowledges. (*See* Reply Mem. of Law in Supp. of Mot. for Certification of Appeal at 10 (Mar. 11, 2025), ECF No. 66.)

23

- Appellant's brief and appendix will be due sixty (60) days after the petition for permission to appeal is granted;

- Appellee's brief will be due sixty (60) days after the opening brief and appendix are served, and can include a response to the appellant's brief and argument respecting the dismissal of OAG's claims under the SHIELD Act and Red Flags regulations;

- Appellant's reply as to the EFTA claim and response to the appellee's arguments regarding the dismissal of OAG's claims under the SHIELD Act and Red Flags regulations will be due fourteen (14) days after appellee's brief is served;

- Appellee's reply as to the SHIELD Act and Red Flags regulations claims will be due fourteen (14) days after appellant's reply brief is served;

- This case will be calendared for argument as soon as practicable after briefing is complete.

24

## CONCLUSION

For the foregoing reasons, the petition should be denied. If the petition is granted, this Court should set an expedited schedule for briefing and argument and permit OAG to seek review of the district court's dismissal of certain claims.

Dated:  New York, New York
        May 12, 2025

Respectfully submitted,

LETITIA JAMES
  *Attorney General*
  *State of New York*
Attorney for Respondent

By:   */s/ Anagha Sundararajan*
      ANAGHA SUNDARARAJAN
      Assistant Solicitor General

BARBARA D. UNDERWOOD
  *Solicitor General*
ESTER MURDUKHAYEVA
  *Deputy Solicitor General*
ANAGHA SUNDARARAJAN
  *Assistant Solicitor General*
      *of Counsel*

28 Liberty Street
New York, NY 10005
(212) 416-8073

25

## CERTIFICATE OF COMPLIANCE

Pursuant to Rules 27 and 32 of the Federal Rules of Appellate Procedure, Ava Mortier, an employee in the Office of the Attorney General of the State of New York, hereby certifies that according to the word count feature of the word processing program used to prepare this document, the document contains 4,757 words and complies with the typeface requirements and length limits of Rules 27(d) and 32(a)(5)-(6).

*/s/ Ava Mortier*